**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-60292-BLOOM/Valle**

AIM RECYCLING OF FLORIDA, LLC
and LKQ PICK YOUR PART
SOUTHEAST, LLC,

Plaintiffs,

v.

METALS USA, INC., UNIVERSAL
SCRAP MANAGEMENT, LLC, OBED
LENDIAN, and SAMUEL ABREU,

Defendants.
_______________________________________/

## OMNIBUS ORDER ON *DAUBERT* MOTIONS

**THIS CAUSE** is before the Court upon Defendants Metals USA, Inc. ("Metals USA") and Obed Lendian's ("Lendian") (collectively, "Defendants")[1] Motion to Exclude Testimony of Richard Brady, ECF No. [223] ("Defendants' Motion"), and Plaintiffs AIM Recycling of Florida, LLC ("AIM") and LKQ Pick Your Part Southeast, LLC's ("LKQ") (collectively, "Plaintiffs") *Daubert*[2] Motion to Exclude Certain Testimony of Defendants' Rebuttal Expert, Thomas McRee, ECF No. [255] ("Plaintiffs' Motion"), (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the attached exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is denied, and Plaintiffs' Motion is denied.

---

[1] The Motions before the Court pertain only to Defendants Metals USA and Lendian. Any reference in this Order to "Defendants" should be understood as referring only to Metals USA and Lendian. The two other Defendants in this case — i.e., Samuel Abreu ("Abreu") and Universal Scrap Management, LLC ("Universal") — will be referred to as such.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## I. BACKGROUND

Plaintiffs initiated the instant RICO[3] action on February 9, 2018, ECF No. [1], and they filed their Amended Complaint on April 10, 2018, against Metals USA, Universal, Lendian, and Abreu, alleging a multi-year conspiracy to steal valuable scrap metal from Plaintiffs' facility, ECF No. [24] ("Amended Complaint").[4] Plaintiffs' Amended Complaint asserts five counts: Count I (Civil RICO – Violations of 18 U.S.C. § 1962(c)); Count II (Civil RICO Conspiracy – Violations of 18 U.S.C. § 1962(d)); Count III (Florida Civil RICO and Remedies for Criminal Activities); Count IV (Florida Civil RICO and Remedies for Criminal Activities – Conspiracy); and Count V (Unjust Enrichment). *Id.*[5] Plaintiffs seek all actual and consequential damages, including treble damages, arising from the conduct alleged in the Amended Complaint. *Id.*

The parties have filed the instant Motions seeking to exclude expert witness and rebuttal expert testimony. Defendants' Motion seeks to exclude the testimony of Plaintiffs' expert witness, Richard Brady ("Mr. Brady"), pursuant to *Daubert*, *Kumho Tire Co. v. Carmichael*,[6] and Federal Rules of Evidence 403 and 702. Defendants set forth three arguments as to why Mr. Brady's testimony should be excluded: (1) Mr. Brady's damages calculation is based exclusively on a spreadsheet prepared by Plaintiffs, and he did not conduct any independent investigation or analysis to confirm the accuracy of the information in the spreadsheet; (2) Mr. Brady's methodology for calculating damages is flawed and inherently unreliable; and (3) Mr. Brady's education, training, and experience do not qualify him to render a lost profit calculation. *See* ECF No. [223]. Plaintiffs' Motion seeks to exclude certain portions of the testimony of Defendants'

---

[3] Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*
[4] The Court presumes the parties' familiarity with the specific facts of this case. *See* ECF No. [276].
[5] Counts I-IV of Plaintiffs' Amended Complaint are asserted against Metals USA, Lendian, Universal, and Abreu, whereas Count V is brought against Metals USA, Lendian, and Universal. ECF No. [24].
[6] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

rebuttal expert, Thomas McRee ("Mr. McRee"), pursuant to *Daubert* and its progeny, because, in addition to his rebuttal opinions, he intends to offer non-rebuttal opinions, which are unhelpful and impermissible legal conclusions for which he lacks the requisite qualifications. *See* ECF No. [255]. Plaintiffs also note that Mr. McRee's testimony should be excluded because, during his deposition, Mr. McRee withdrew certain opinions previously offered after reviewing translated transcripts of audio recordings of allegedly incriminating telephone conversations between Lendian and Abreu.

The Court will address each Motion in turn.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[7]

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific,

[7] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted all decisions of the Court of Appeals for the Fifth Circuit that were rendered prior to October 1, 1981.

experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co.*, 526 U.S. at 152). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley,* 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.,* 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402 F.3d at 1103 (quoting *Frazier,* 387 F.3d at 1258).

Through this lens, the Court analyzes each Motion.

## III. DISCUSSION

### A. Defendants' Motion

Defendants seek to exclude the following opinions — which they characterize as either "review-based opinions"[8] or "experience-based opinions"[9] — offered by Mr. Brady:

> Opinion 1: Metals USA purchased scrap from Abreu at an average freight-adjusted discount exceeding 38 percent of fair market value on a shipping point basis, Free on Board ("FOB") Plaintiffs' facility.
>
> Opinion 2: During the period of the alleged thefts, there was no point in time in which Plaintiffs could not have sold the finished shredded product in the open market for a price exceeding what Defendants achieved.
>
> Opinion 3: The loss incurred by Plaintiffs is a function of the selling prices they were able to achieve in the open market on actual sales of shred during the period, considering the foregone sales resulting from the theft of 40,000+ net tons of shred.

---

[8] Defendants describe Mr. Brady's "review-based opinions" as the testimony or opinions that are based upon documents or information that Mr. Brady reviewed. *See* ECF No. [223] at 8. Opinions 1-5 are listed as Mr. Brady's "review-based opinions." *Id.* at 9.

[9] Defendants describe Mr. Brady's "experience-based opinions" as the testimony or opinions that are based upon Mr. Brady's experience alone. *See* ECF No. [223] at 8. Opinions 6-10 are listed as Mr. Brady's "experience-based opinions." *Id.* at 14-15.

> Opinion 4: Records of comparable sales achieved by Plaintiffs during the relevant time periods demonstrates that Plaintiffs' total damages in this case are $10,419,636.00.
>
> Opinion 5: Metals USA records show instances where the finished product was likely purchased by Metals USA at prices lower than the prices Plaintiffs paid for raw materials to produce the finished shredded product.
>
> Opinion 6: There are slim operating margins in the shredding business, often below 10 percent.
>
> Opinion 7: There is no apparent reason for discounting the selling values for a readily marketable commodity by more than 38 percent.
>
> Opinion 8: The cost of converting the raw materials (shredding and sortation) from feedstock to a finished shredded product suitable for consumption in a furnace can exceed $50/gross ton.
>
> Opinion 9: It is highly unusual and outside the normal course of business for a shredder operator to sell its finished product to another scrap dealer or "non-consumer" at anything other than a premium to the consuming market.
>
> Opinion 10: A scrap dealer or processor approached with an offer to purchase a finished shredded scrap product at such a discount to market would be highly suspicious and would likely conduct their own inquiry as to the origin and nature of the transaction before proceeding with the purchase.

*See* ECF No. [223].

Defendants argue that Mr. Brady's review-based opinions must be excluded as unreliable because they are based exclusively on a spreadsheet prepared by Plaintiffs, and he did not conduct any independent investigation or analysis to confirm the accuracy of the information in the spreadsheet. Defendants also argue that Mr. Brady's experience-based opinions should be excluded under *Daubert*'s qualifications and reliability prongs because Plaintiffs' have not established Mr. Brady's particularized experiential knowledge to support his testimony, nor have they established the reliability of the methodology Mr. Brady applied in reaching his conclusions. Finally, Defendants contend that nothing in Mr. Brady's education, experience, or training qualifies him to render an opinion on lost profits or damages.

In their Response, Plaintiffs first argue that Defendants misunderstand the foundation for Mr. Brady's review-based opinions, and that these opinions are reliable because they are based on his independent review of generally accepted indices in the industry. Further, Plaintiffs note that Opinion 6 is more appropriately characterized as a review-based opinion because Brady had a sufficient review-based foundation for this Opinion. Plaintiffs also argue that Mr. Brady's experience-based opinions are proper because experience can be the basis of reliable expert testimony in fields, like the one in this case, that lack empirical studies and Brady's credentials and experience qualify him to offer these opinions. Lastly, Plaintiffs argue that Brady is qualified to render an opinion on lost profits and damages based on his credentials.

With regard to Mr. Brady's experience-based opinions, the Court first notes that Defendants' arguments that Mr. Brady relied solely upon Plaintiffs' spreadsheet of assessed damages is directly contradicted by the record. In fact, Mr. Brady explicitly explained the independent basis of his analysis:

> The 38 percent discount that I arrived at within my independent analysis of the selling prices that Mr. Abreu sold the material for, relative to what I thought the open market selling price was to a consumer, FOB the AIM facility.
>
> The analysis that [Plaintiffs' corporate representative] conducted was a loss calculation based on the amount of volume lost and the selling prices that they would have received in that given time period.
>
> . . . .
>
> I just want to make sure we don't confuse the two of those.

Dep. of Richard Brady 128:19-129:5, ECF No. [223-4] ("Brady Dep."). Moreover, Mr. Brady based his independent analysis on two relevant industry indices and his extensive experience working in the industry. *Id.* at 22:15-19, 30:11-14. Thus, Defendants' arguments with regard to Opinions 1, 2, and 5 necessarily fail. Mr. Brady's testimony sufficiently establishes a proper foundation for his reasoning and methodology on these opinions.

Likewise, with regard to Opinions 3 and 4, the Court is satisfied that the "mind of a prudent impartial person [would] be satisfied that the damages are not the result of speculation or conjecture." *Paul Gottlieb & Co. v. Alps S. Corp.*, 985 So. 2d 1, 9 (Fla. 2d DCA 2007). This is not a situation where the expert did not perform any independent evaluation by simply adopting a party's calculations or failing to explain his or her valuation approaches. *See, e.g.*, *MasForce Europe, BVBA v. MEC3 Co.*, No. 8:11-CV-1814-T-24AEP, 2013 WL 12156469, at *6 (M.D. Fla. Dec. 4, 2013); *Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1246 (M.D. Fla. 2003). Rather, in assessing Plaintiffs' financial losses, Mr. Brady took into account "the prices that AIM was able to achieve in the marketplace on their other sales of material in the same period of time . . . on a shipping point basis," and Abreu's discounted sales were "relative to an average of the market indices or market garnered price." Brady Dep. 72:7-20; *id.* at 86:4-20 ("A. I would tell you that in my opinion if the—if [Plaintiffs] were able to sell the majority of their material in the marketplace at a price at a commercial grade quality, that they would be able to have sold all of the material in the market at that price for a similar quality. Q. Are you also assuming that the Florida marketplace is governed by these indices that you reference in your report? . . . A. The indices as referenced in my analysis are regional in nature including the Raw Material Data Aggregation Service, the RMDAS service, which was a south region data. And the broader SteelBenchmarker indices. Those are both accepted industry indices for various scrap market.").

The Court concludes that Mr. Brady's opinion is sufficiently based upon valid and reliable methodology and reasoning. *See G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1539 (11th Cir. 1985) ("[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The proof may be indirect and it may include

estimates based on assumptions, so long as the assumptions rest on adequate data." (quoting *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 668 (5th Cir. 1974))). Whether Mr. Brady should have conducted further investigation to verify the basis of Plaintiffs' historical pricing data presented in the spreadsheet does not, on its own, support the unreliability of his opinions. *Id.* Defendants' arguments regarding Mr. Brady's use of Plaintiffs' spreadsheet are challenges to the weight of his report, rather than its admissibility, which must be evaluated by the jury. *See Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). Accordingly, Defendants' Motion is denied as it relates to Mr. Brady's review-based opinions.

Moreover, with regard to Defendants' challenges to Mr. Brady's experience-based opinions, the Court begins by reiterating that an expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G.*, 2013 WL 752697, at *3 (citing *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc.*, 280 F.R.D. at 661 (citing *Kilpatrick*, 2009 WL 2058384, at *1). Where an expert proffers non-scientific, experience-based testimony, a court has flexibility in assessing the relevant factors relating to reliability. *Frazier*, 387 F.3d at 1262. This assessment "will depend . . . on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Kumho Tire Co.*, 526 U.S. at 150). An expert relying on his personal knowledge and experience — as opposed to scientific training or certifications — may testify as long as he may reliably apply his experience to assist the trier of

fact. *See Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1328 (S.D. Fla. 2013) (citing *Frazier*, 387 F.3d at 1261). Questions about the expert's lack of specific knowledge regarding a sub-topic within his industry are more appropriately considered as a challenge to the foundation for his opinion, not his qualifications. The Court must ensure the witness has appropriately explained how his experience leads to the conclusion he reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Id.* at 1261. "An expert's unexplained assurance that [his] opinions rest on accepted principles" is not enough. *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1130 (citing *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1242 (11th Cir. 2005)).

Mr. Brady testified as to his extensive employment history jobs surrounding the sale, purchase, and sourcing of raw materials, such as shred, for almost thirty years. Brady Dep. 22:15-19. Further, Mr. Brady's experience in the industry was centered in large part on sourcing raw materials for companies and advising these companies on purchase and sale prices of these sourced materials. *Id.* at 15:19-17:19. Likewise, it is undisputed that, in addition to working in various positions for various steel companies throughout his career, Mr. Brady also has a degree in finance and an MBA. ECF No. [223] at 16; ECF No. [248] at 19. Plaintiffs offer Mr. Brady's expert testimony based on this experience and Mr. Brady's independent review of relevant published indices that are generally accepted and relied upon in the industry. Brady Dep. 30:11-14. The Court concludes that Mr. Brady's background and experience meet the "minimum qualifications" necessary to permit him to testify in this case. *See J.G.*, 2013 WL 752697, at *3 ("an expert must satisfy a relatively low threshold, beyond which qualification becomes a credibility issue for the jury") (citing *Martinez v. Altec Indus., Inc.*, 2005 WL 1862677, at *3 (M.D. Fla. Aug. 3, 2005))).

Further, an expert's qualifications need not be narrowly tailored to the precise circumstances of the case; merely "because [the expert's] experience does not precisely match the matter at hand" does not render him unqualified. *J.G.*, 2013 WL 752697, at *3 (citations omitted). An expert may "testify regarding narrow sub-topics within his broader expertise — notwithstanding a lack of specific experience with the narrower area — as long as his testimony would still assist a trier of fact." *See Remington v. Newbridge Secs. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014); *see also Maiz*, 253 F.3d at 665 (affirming the district court's decision to permit an economic expert to testify on damages relating to real-estate fraud, even though the expert had no specific real-estate experience, finding the issue of damages was sufficiently within the expert's broader expertise). Similarly, this Court finds that Mr. Brady's ability to assess relevant industry indices and pricing of scrap metal in computing damages is sufficiently within Mr. Brady's expertise. *See Martinez*, 2005 WL 1862677, at *3 (explaining that once there exists "reasonable indication of qualifications," those qualifications then "become an issue for the trier of fact rather than for the court in its gate-keeping capacity" (citing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999))).

Mr. Brady sufficiently testified as to the basis of Opinions 6-10. First, with regard to Opinions 6 and 8, Mr. Brady testified as to his review of the published earnings and gross margins of publicly traded companies in the industry, in addition to his experience as a broker and consultant, through which he had access to pricing, cost, and sales information for transactions of raw materials. Brady Dep. 15:19-17:19, 22:15-19, 136:24-137:11. Likewise, with regard to Opinions 7 and 9, Mr. Brady testified that the 38 percent discount was "relative to an average of the market indices or market garnered price," and that, in his experience, a typical gross margin would range between 5 and 20 percent. *Id.* at 71:7-20, 138:13-16. Finally, with regard to Opinion

10, Mr. Brady testified as to the numerous reasons why he felt that a scrap dealer or processor should be highly suspicious of an offer to sell scrap at steep discounts. *Id.* at 122:23-123:10. Thus, the Court concludes that Defendants' arguments with regard to Mr. Brady's experience-based opinions must be denied. Such arguments are more appropriately considered as a challenge to the weight that should be given to his opinion and not to its admissibility.

For the reasons discussed above, Defendants' Motion is denied.

**B. Plaintiffs' Motion**

Plaintiffs seek to exclude the following opinions — identified from Mr. McRee's rebuttal expert report, ECF No. [255-3],[10] and his deposition testimony, ECF No. [255-1][11] — offered by Mr. McRee in rebuttal:

> Opinion 1: It is extremely difficult to know with any certainty whether the shredded scrap purchased at a discount was actually stolen.
>
> Opinion 2: The losses Plaintiffs incurred are a function of their poor management and their own employees stealing from them.
>
> Opinion 3: Defendants were not a part of, nor were they aware of, Plaintiffs' employees' theft scheme.
>
> Opinion 4: Thieves normally do not keep records of what they steel.
>
> Opinion 5: Thieves normally do not turn records of stolen items over to plaintiffs in order to bolster the plaintiffs' case against them.
>
> Opinion 6: Thieves would not get all of the seller's or broker's information before consummating an illegal deal.
>
> Opinion 7: If an individual was knowingly buying a stolen item, they would not weigh it.
>
> Opinion 8: It is very hard to destroy a computer.

[10] Plaintiffs identify Opinions 1-3 from Mr. McRee's Report. *See* ECF No. [255] at 2.
[11] Plaintiffs identify Opinions 4-10 from Mr. McRee's Deposition. *See* ECF No. [255] at 2-3.

> Opinion 9: If there was a recording where Lendian said, "oh yeah, I knew the material was stolen that's why I was buying it so cheaply and I got such a good discount on it," the Department of Justice ("DOJ") would have indicted him.
>
> Opinion 10: It is possible that the reason Lendian and Abreu were having the kinds of conversations reflected in the recordings was because Abreu had put Lendian in a terrible position by having sold him stolen materials over a period of four years.

*See* ECF No. [255].

Plaintiffs argue that the opinions Mr. McRee offers in his Report (Opinions 1-3) fail *Daubert*'s helpfulness prong because they are impermissible legal conclusions. Plaintiffs also contend that Mr. McRee is not qualified to offer opinions on mental state (Opinions 1 and 3), the quality of Plaintiffs' management skills (Opinion 3), or the expected behavior of thieves or the DOJ (Opinions 4-10). In response, Defendants explain that they do not oppose the exclusion of Opinions 2-10. Nonetheless, Defendants argue that Opinion 1 should not be excluded because it is offered to rebut Mr. Brady's opinion that a scrap dealer or processor would be highly suspicious of being approached with an offer to purchase finished shredded scrap at the discount alleged here and he does not opine as to Defendants' alleged knowledge that the materials were stolen.

"An expert may not . . . merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Expert witness testimony that suggests the ultimate result to the jury is not helpful. *Id.* Further, "[a] witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id.* (citing *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980)). Nevertheless, "[a]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997)).

The Court concludes that Mr. McRee may offer testimony that, "in light of all of the variables that may affect the price of shredded scrap, it is extremely difficult to know with any certainty whether the shredded scrap purchased at a discount was actually stolen," ECF No. [255-3] at 4, because this opinion is not an impermissible legal conclusion. Mr. McRee's opinion is based upon the different industry variables that might affect the price of shredded scrap, and whether certain discounted prices could be raise ownership concerns for potential purchasers. Defendants offer this opinion to rebut Mr. Brady's opinion as to the "highly suspicious" nature of certain discounted scrap prices. Further, unlike all of the cases cited by Plaintiffs,[12] Mr. McRee's opinion does not reach the issue of whether Defendants in this case knew or should have known that the scrap they purchased from Abreu was stolen. *See, e.g.*, *Bouton v. Ocean Props., Ltd.*, No. 16-cv-80502, 2017 WL 4792488, at *14 (S.D. Fla. Oct. 23, 2017) (concluding that expert testimony on whether defendants were willful or reckless was an inadmissible legal conclusion). Thus, the Court concludes that Mr. McRee's opinion on this issue is permissible because it does not tell the jury what specific result it should reach as it relates to Defendants.[13] Accordingly, Plaintiffs' Motion is denied.

---

[12] It is worth noting that Defendants make absolutely no effort to support their arguments in their response to Plaintiffs' Motion with *any* citations to case law. *See* ECF No. [260]. As explained above, when a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink*, 400 F.3d at 1291-92; *Allison*, 184 F.3d at 1306. While the Court is troubled by the Defendants' brief, it will, in fairness to both parties here, analyze the merits of the issues presented.

[13] Plaintiffs also challenge the admissibility of Mr. McRee's opinion on the basis that he is not qualified to opine on issues of a person's mental state or knowledge. However, the Court concludes that this argument has no merit because, as noted above, Mr. McRee's opinion does not reach the issue of Defendants' knowledge, or lack thereof. Instead, his opinion only addresses what industry factors affect scrap prices and whether discounted scrap prices could alert potential purchasers that the scrap metal for sale was stolen. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Exclude Testimony of Richard Brady, **ECF No. [223]**, is **DENIED**.
2. Plaintiffs' *Daubert* Motion to Exclude Certain Testimony of Defendants' Rebuttal Expert, Thomas McRee, **ECF No. [255]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 14, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record